IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-11282
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SUSAN VIOLA KLAT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:97-CV-678-A)
_____

April 27, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Federal prisoner Susan Viola Klat appeals from the order committing her to the custody of

the United States Attorney General for hospitalization for treatment pursuant to 18 U.S.C. §

4245. The involuntary commitment order was issued by a magistrate judge, acting by written

consent of the parties pursuant to 28 U.S.C. § 636(c)(1). At issue in this appeal are: whether the

magistrate judge lacked jurisdiction; the constitutionality of the preponderance of the evidence

standard set forth in 18 U.S.C. § 4245(d); and whether Klat was denied the right to self-

representation, to subpoena witnesses and documents, and to confront and cross-examine

witnesses. We AFFIRM.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I.  FACTS & PROCEEDINGS

Klat began a hunger strike while incarcerated at the Washington, D.C. Jail for threatening Chief Justice Rehnquist and the clerk of the United States Supreme Court.  Klat initiated the hunger strike to protest an alleged violation of her constitutional rights in her criminal trial.  On July 29, 1997, Klat was transferred to the Federal Correctional Institution at Danbury, Connecticut ("FCI Danbury"), where she continued her hunger strike for another ten days, resulting in her transfer to the Federal Medical Center, Carswell ("FMC Carswell") in Fort Worth, Texas on August 7, 1997.  Klat continued her hunger strike at FMC Carswell, prompting the government's initiation of the § 4245 commitment proceeding at issue here.

On August 14, 1997, the government filed its petition for a hearing to determine whether Klat was presently suffering from a mental disease or defect requiring her commitment to a suitable facility for treatment and moved for an expedited hearing and the appointment of counsel and a qualified examiner for Klat.  The government included in its petition a Mental Health Evaluation dated August 11, 1997, performed by Dr. Stanton, Chief of Psychiatry at FMC Carswell, which indicated that Klat was presently suffering from "severe mental illness best characterized as a delusional disorder, persecutory type" requiring her commitment for treatment. The district judge referred the appointment of counsel to Magistrate Judge Bleil.  Judge Bleil, satisfied that Klat "(1) [was] financially unable to employ counsel, (2) want[ed] to be represented by counsel, and (3) ha[d] not waived representation by counsel," appointed the Federal Public Defender for the Northern District of Texas to represent Klat.  The same day, Klat's appointed counsel, Paul Stickney, signed a written consent form expressly stipulating to referral of the matter to a magistrate judge.

Prior to the commitment hearing, Mr. Stickney filed several motions on Klat's behalf. Among them was a motion for a separate mental examination by clinical psychologist Dr. Schmitt, Ph.D, which the magistrate granted.  Dr. Schmitt examined Klat on September 11 and thereafter submitted his report to defense counsel.  On October 9, Mr. Stickney filed a motion requesting

2

the issuance of a subpoena duces tecum seeking: the production of Klat's prior employment records from Clinical One Nursing Agency and the Delaware Nursing Licensing Board; the appearance of numerous medical professionals within the Bureau of Prisons who had written reports and/or mental health evaluations concerning Klat while she was housed at the Washington, D.C. jail, FCI Danbury, and FMC Carswell; and Klat's medical records from each of the three institutions. The government opposed the motion on the grounds that most of the witnesses lived outside the judicial district and more than 100 miles from the site of the hearing, issuance of subpoenas to such persons would be unduly burdensome, the majority of the matters identified in the motion were not relevant to the determination of Klat's *present* mental condition and need for treatment, and the other items were readily available to Klat, her appointed counsel, and her qualified examiner without the need for a subpoena. The magistrate subsequently denied the motion on October 23.

Shortly after this denial, on October 29, just eight days before the hearing, Mr. Stickney filed a motion to withdraw as Klat's appointed counsel, stating that Klat wanted to proceed *pro se* with the appointment of standby counsel to aid her in presenting her case because she and defense counsel disagreed on trial strategies and the theory of the case. While the motion to withdraw was pending, Klat filed two *pro se* motions—a motion to request the case be heard before a district judge and for an expedited hearing to obtain temporary injunctive relief and a motion for issuance of subpoenas for production of records.

The commitment hearing was held before Magistrate Judge Bleil on November 6. At the beginning of the hearing, Klat was permitted to address the court at length. She reiterated her request to represent herself, made arguments in support of each of her pending motions, and submitted additional documents to the court. During this extensive colloquy, the magistrate judge denied Mr. Stickney's motion to withdraw, over Klat's objection. Her chief argument was essentially that she was entitled to effective assistance of counsel under the Sixth Amendment, and because Mr. Stickney's motion for subpoenas—which the court previously denied—demonstrated

3

that she was not receiving effective assistance, that she had a right to represent herself under 28 U.S.C. § 1654.[1] Addressing her pending motion for subpoenas and in response to the prior denial of Mr. Stickney's subpoena motion, Klat again complained that she was being denied effective assistance of counsel.[2] The magistrate judge also denied Klat's motion to transfer the case to a district court judge.

The government then presented its case, urging the court to grant its petition and requesting that the Court take judicial notice of the three expert reports submitted in camera—Dr.

---

[1] Klat argued as follows:

> DEFENDANT KLAT: Well, as I said, I also -- before you go any further, I have got a notice of appeal here to appeal that order to a district judge if you're denying his motion [to withdraw].
> I am, under the Sixth Amendment, allowed and afforded effective assistance of counsel. His motion that he filed shows that I'm not receiving effective assistance of counsel. You can't argue that for the simple fact it's the wrong rule, wrong reasons, wrong information, stated. You cannot have a no-holds barred fight in a court commitment hearing. To deny me evidence in itself is not legal. To deny me a right to represent myself, which Title 28, Section 1654, allows me to represent myself personally in all courts.
> * * *
> I would like your reasons on record as to why you're denying Mr. Stickney's motion to remove himself knowing from first hand -- observing from his motion that he hasn't been effective.

Record Vol. 2, at 4-5.

[2] Klat asserted:

> DEFENDANT KLAT: * * *
> I don't quite understand why this Court doesn't want everything on record, you know.
> THE COURT: Ms. Klat, everything -- I have the documents that were handed to me. They will be on the record.
> DEFENDANT KLAT: Yes, but it's production of documents to show what's going on?
> THE COURT: Right, I overrule Mr. Stickney's --
> DEFENDANT KLAT: Right, but you haven't given me a reason --
> THE COURT: -- motion.
> DEFENDANT KLAT: -- for not allowing me to have effective assistance of counsel knowing that I have no access to documents, evidence, or anything else. And you know I cannot present evidence at this hearing unless I have access to it.

Record Vol. 2, at 7.

4

Stanton's original August 11 report, Dr. Schmitt's September 23 report, and Dr. Stanton's November 3 update. Dr. Stanton and Dr. Schmitt both concluded that Klat was presently suffering from a serious illness for which she was in need of psychiatric treatment at a suitable facility. The magistrate then allowed Klat to present her case. After consulting with her attorney, Klat testified as a witness. Defense counsel then submitted three exhibits on Klat's behalf, which were admitted as evidence. No other witnesses were called to testify. After the government and defense counsel made their final comments, Klat again engaged in a lengthy discussion with the court, during which she made further objections to the hearing, asserted her right to confrontation,[3] submitted additional documents to the court, and reiterated her arguments against commitment. The hearing was adjourned. The following day, Magistrate Judge Bleil issued an order granting the government's petition to commit Klat for appropriate treatment based on the unanimous expert opinion that Klat was presently suffering from a mental disease or defect requiring her commitment to a suitable facility for treatment. The order reiterated the denial of Mr. Stickney's motion to withdraw and further denied each of Klat's *pro se* motions. This appeal followed.

## II. DISCUSSION

Klat contends that (1) the magistrate judge lacked jurisdiction, (2) the preponderance of the evidence standard in § 4245(d) is unconstitutional because due process instead required clear and convincing evidence, (3) she was denied her right to represent herself at the commitment hearing, (4) she was denied her right to subpoena witnesses and documents, and (5) she was denied her right to confront and cross-examine witnesses. As an initial matter, we note that the

---

[3] After Mr. Stickney's final remarks to the Court, Klat asserted: "I'm allowed to confront witnesses at the hearing. . . . I should be allowed, even if they are allowed the motion, to confront the witnesses against me, and Dr. Stanton is here, and I should be allowed to confront her." Record Vol. 2, at 26. Although Dr. Stanton was present at the hearing, neither she nor any other witnesses were called by either the government or defense counsel. Immediately after Magistrate Judge Bleil adjourned the hearing, Klat again asserted her confrontation rights:
"THE COURT: Very well. Then that concludes this hearing, and the Court is adjourned."
"DEFENDANT KLAT: Well, Your Honor, am I not allowed to confront the witnesses?"
"THE COURT: Court's adjourned." *Id.* at 33.

magistrate judge's order is appealable directly to this court.  *See* 28 U.S.C. § 636(c)(3).

### A.  *Jurisdiction of the Magistrate Judge*

Klat challenges the jurisdiction of the magistrate judge to enter the order granting the government's petition to commit Klat for treatment under 18 U.S.C. §§ 4245 and 4247 on three grounds: (1) referral of the matter to the magistrate judge was invalid because, notwithstanding her counsel's express written consent, she did not *personally* consent to disposition of the petition by the magistrate judge; (2) a § 4245 commitment proceeding is not a "civil matter" as contemplated by 28 U.S.C. § 636(c)(1); and (3) Article III of the Constitution forbids even consensual reference of a § 4245 proceeding for disposition by a magistrate judge.

The magistrate judge had jurisdiction over this proceeding.  This court recently considered and rejected identical arguments in *United States v. Muhammad*, 165 F.3d 327, 329-34 (5th Cir. 1999).  Absent a superseding decision by this court sitting *en banc* or by the United States Supreme Court, we are bound by our prior panel's opinion.  *See, e.g.*, *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir.), *cert. denied*, — U.S. —, 119 S. Ct. 413, 142 L. Ed. 2d 336 (1998).  Following *Muhammad*, we hold that the consent by Klat's counsel satisfied the § 636(c)(1) requirements for referral to the magistrate,[4] *see* 165 F.3d at 331-32; § 4245 civil commitment proceedings are "civil" matters within the meaning of § 636(c)(1), *see id.* at 332; and Article III

---

[4]  In so holding, we reject Klat's contention at oral argument that this case is distinguishable from *Muhammad* because Klat objected to disposition by the magistrate in a *pro se* motion filed three days before the hearing and again during the hearing itself.  Klat's counsel signed the consent form referring the matter to the magistrate on August 15 and that consent was binding on Klat.  During the nearly three month period before the hearing, Klat, through defense counsel, submitted several motions to the magistrate for disposition.  Klat made no objection to the referral until after Judge Bleil denied defense counsel's motion for subpoenas.  The magistrate judge was not required to inquire at the hearing whether Klat personally consented to the referral because the signed consent form satisfied the requirement that consent be on the record.  *See Muhammad*, 165 F.3d at 331.  Once a valid consent and reference to the magistrate had been given, Klat was not entitled to subsequently withdraw that consent and have the reference to the magistrate vacated absent extraordinary circumstances.  *See* 28 U.S.C. § 636(c)(6) (1993) ("The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate under this subsection."); *Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021-22 (5th Cir. 1987); *accord Fellman v. Fireman's Fund Ins. Co.*, 735 F.2d 55, 57-58 (2d Cir. 1984).  Klat failed to demonstrate such extraordinary circumstances.

does not preclude consensual reference of a § 4245 proceeding to a magistrate judge, *see id.* at 332-33.

## B. *Preponderance of the Evidence Standard*

Relying on *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979), Klat also challenges the constitutionality of the preponderance of the evidence standard applicable to civil commitment proceedings as set forth in 18 U.S.C. § 4245(d).[5] Because Klat failed to raise this argument below, we review only for plain error. *See, e.g.*, *Muhammad*, 165 F.3d at 333. *Addington* held that, in order to satisfy due process, the involuntary civil commitment of an ordinary citizen to a mental health facility for an indefinite period must be supported by clear and convincing evidence. *See* 441 U.S. at 432-33, 99 S. Ct. at 1812-13. As we explained in *Muhammad*, the involuntary commitment of a prisoner pursuant to § 4245 is distinguishable from the involuntary commitment of an ordinary citizen—at issue in *Addington*—because an ordinary citizen has a greater liberty interest at stake than a prisoner who is already subject to confinement. We concluded that this distinction may very well justify a different standard of proof. Following *Muhammad*, we again hold that application of the preponderance of the evidence standard in this case did not amount to plain error because "it is, at the very least, arguable that the preponderance of the evidence standard specified in § 4245(d) satisfies due process requirements." 165 F.3d at 334.[6]

---

[5] Section 4245 provides, in relevant part:
> **(d) Determination and disposition.**—If, after the hearing, the court finds by a *preponderance of the evidence* that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. . . .

18 U.S.C. § 4245(d) (emphasis added).

[6] *See also id.* at 333-34 (citing *Jones v. United States*, 463 U.S. 354, 366-67, 103 S. Ct. 3043, 3051, 77 L. Ed. 2d 694 (1983) (upholding application of the preponderance of the evidence standard to indefinite commitment of a criminal defendant who had been found not guilty by reason of insanity), and *Vitek v. Jones*, 445 U.S. 480, 491-93, 100 S. Ct. 1254, 1263-64, 63 L. Ed. 2d 552 (1980) (suggesting that involuntary commitment of convicted felons is less of a curtailment of liberty than the involuntary commitment of ordinary citizens)).

## C. *Right to Self-Representation*

Klat also claims that she was denied her constitutional and statutory right to self-representation and that such denial constitutes reversible error. Klat relies on *Faretta v. California*, 422 U.S. 806, 807, 835-36, 95 S. Ct. 2525, 2527, 2541, 45 L. Ed. 2d 562 (1975), which held that an accused has a Sixth Amendment right to self-representation when he knowingly and intelligently waives the right to counsel. Alternatively, Klat contends that the right to self-representation in a § 4245 commitment proceeding is guaranteed by the Fifth Amendment Due Process Clause. She argues that because she is afforded the statutory right to counsel under § 4247(d), the logic of *Faretta* dictates that she has the concomitant right to reject that assistance.[7] Klat further argues that her right to self-representation is protected by statute, 28 U.S.C. § 1654, the generally applicable provision that gives federal litigants the right to conduct their own cases.[8] According to Klat, the magistrate judge reversibly erred by denying her clear and unequivocal request to proceed *pro se* without conducting a hearing to determine whether her waiver of appointed counsel was knowing and intelligent.

Klat does not have a constitutional right to represent herself at a § 4245 involuntary commitment hearing. Because this proceeding is a civil matter, any right to self-representation is not protected by the Sixth Amendment.[16] Additionally, the statutory right to self-representation in civil cases does not enjoy constitutional protection. *See Andrews v. Bechtel Power Corp.*, 780

---

[7] To support this argument, Klat relies on *Myers v. Collins*, 8 F.3d 249, 251-52 (5th Cir. 1993) (applying *Faretta*'s reasoning to hold that a state criminal defendant has a constitutional right to present *pro se* briefs and motions on direct appeal), and *Myers v. Johnson*, 76 F.3d 1330, 1338 n.7 (5th Cir. 1996) (explaining that a criminal defendant's right to present *pro se* briefs on direct appeal is a Due Process right and not a Sixth Amendment right).

[8] Section 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654.

[16] We also note that the Sixth Amendment cases relied upon by Klat are also distinguishable from the instant case in one important respect—the mental condition of the defendants was not at issue. *See, e.g.*, *Faretta*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1980); *Dorman v. Wainwright*, 798 F.2d 1358 (11th Cir. 1986); *United States v. McKinley*, 58 F.3d 1475 (10th Cir. 1995); *United States v. Tanner*, 16 M.J. 930 (N-M.C.M.R. 1983).

F.2d 124, 137 (1st Cir. 1985) ("While there is no constitutional right to self-representation in civil cases, there is a statutory right of long standing to such self-representation, 28 U.S.C. § 1654." (internal citation omitted)); *O'Reilly v. New York Times Co.*, 692 F.2d 863, 867 (2d Cir. 1982) (stating that § 1654 does "not enjoy[] the constitutional protection subsequently afforded to the right of self-representation in criminal cases"); *see also Eitel v. Holland*, 787 F.2d 995, 998 (5th Cir. 1986) (relying on *Andrews* and *O'Reilly* to conclude that a state court litigant has no constitutional due process right to self-representation in a civil case). We have not previously considered whether the general statutory right to self-representation applies in the context of a § 4245 commitment hearing where the mental competency of the defendant is directly at issue.

It is clear that Klat had a statutory right to counsel at the commitment hearing. In fact, § 4247(d) commands that the person whose mental condition is at issue "shall be represented by counsel" during the hearing. In the criminal context, the right to counsel at trial may be waived only if done competently, knowingly, and intelligently. *See Faretta*, 422 U.S. at 835-36, 95 S. Ct. at 2541 ("[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits" associated with the right to counsel); *id.* (stating that "a defendant need not himself have the skill and experience of a lawyer in order *competently and intelligently* to choose self-representation") (emphasis added); *Godinez v. Moran*, 509 U.S. 389, 396-401, 113 S. Ct. 2680, 2685-87, 125 L. Ed. 2d 321 (1993) (holding that the mental competency required to waive the right to counsel in a criminal trial is the same as the competency to stand trial—whether the defendant has the ability to understand the proceedings and sufficient ability to consult with counsel—but that such waiver must also be "knowing and voluntary"). Even if a valid waiver is given, the right to self-representation is not absolute. The trial court may terminate self-representation due to abuse or misconduct and it has discretion to appoint standby counsel, even over the defendant's objection. *See Faretta*, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46. Our concern is whether a prisoner in a § 4245 commitment hearing can competently, knowingly, and intelligently waive the right to counsel *before* the issue of his present mental condition is resolved.

9

The Eighth Circuit has considered the issue and held that a prisoner may waive the right to counsel at a § 4245 commitment hearing.[17] However, the D.C. Circuit's analysis of the issue of Klat's ability to waive her right to counsel at the mental competency hearing prior to her criminal trial is also instructive. In Klat's appeal of her criminal conviction, the D.C. Circuit determined that the district court erred in allowing Klat to waive her right to counsel and proceed *pro se* at the hearing to determine her competence to stand trial. *See United States v. Klat*, 156 F.3d 1258, 1262-63 (D.C. Cir. 1998). The court held that "where a defendant's competence to stand trial is reasonably in question, a court may not allow that defendant to waive her right to counsel and proceed *pro se* until the issue of competency has been resolved." *Id.* at 1263. The court reasoned that it was contradictory to conclude that a defendant whose competency to stand trial was at issue could nonetheless make a knowing and intelligent waiver of the right to counsel. *See id.* Although the context is slightly different, we nonetheless believe that the D.C. Circuit's reasoning applies with equal force in this case since Klat's mental condition was directly at issue in both the competency hearing and the commitment hearing.[18] Under the circumstances of this

___

[17] The Eighth Circuit considered the issue in *United States v. Veltman*, 9 F.3d 718, 721 (8th Cir. 1993), and held that a prisoner may waive the statutory right to counsel at a § 4245 commitment hearing, subject to due process requirements. In *Veltman*, the prisoner was allowed to proceed *pro se* at the commitment hearing and was ordered committed. On appeal, the Eighth Circuit rejected Veltman's argument that his subsequent commitment to a mental health facility demonstrated his inability to waive counsel stating, "[t]he mere fact that Veltman needed 'custody for care or treatment in a suitable facility' does not mean he lacked sufficient capacity to decide to proceed *pro se*." *Id.* at 722. The court held that Veltman made a valid waiver of his right to counsel because the record demonstrated that the waiver was voluntary, Veltman had the intellectual capacity to understand the consequences of his decision, appointed counsel was instructed to remain available at the hearing to assist Veltman if necessary, and their was no indication that Veltman's conduct at the hearing was inappropriate. *See id.* at 721-22.

We find it significant that, in reaching this conclusion, the Eighth Circuit placed particular importance on the fact that Veltman's appointed counsel was required to remain at the hearing and in fact twice conferred with Veltman during the proceeding. *See id.* at 721 ("More importantly, the magistrate judge instructed Ms. Roe to remain available at counsel table, which she did, and the record shows that Veltman had two off-the-record conversations with Ms. Roe during the proceedings.").

[18] We recognize that the specific inquiry undertaken at a competency hearing—whether the defendant is presently suffering from a mental disease or defect that would render her unable to understand the nature of the proceedings against her or to assist properly in her own defense—is somewhat different than the inquiry at a § 4245 involuntary commitment hearing—whether the

case, the magistrate judge did not err in refusing to dismiss Mr. Stickney as Klat's appointed counsel.

Moreover, even assuming Klat had sufficient capacity to make a knowing and intelligent waiver of the right to counsel, the record establishes that, despite Mr. Stickney's participation at the hearing, Klat's right to represent herself was not denied. In *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984), the Supreme Court considered whether the unsolicited participation by standby counsel, appointed over defendant's objection, violated a criminal defendant's Sixth Amendment right to represent himself at trial. The Court explained that the nature of the defendant's right to self-representation "plainly encompasses certain specific rights to have his voice heard." *Id.* at 174, 104 S. Ct. at 949. In the context of a criminal trial "[t]he *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* Concluding that the record established that the defendant had been afforded all of these rights, the Court then considered whether the uninvited involvement by standby counsel infringed the defendant's right to conduct his own case. *See id.* at 174-76, 104 S. Ct. at 949-50. After rejecting an absolute bar on standby counsel's uninvited participation, the Court explained that "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177, 104 S. Ct. at 950. The court set forth a two-part test to determine whether standby counsel's participation improperly infringed on the defendant's right to self-representation. The right to self-representation is not infringed if (1) the defendant is allowed to "preserve actual control over the case he chooses to present" without substantial interference, and (2) standby counsel's participation does not "destroy the jury's perception that the defendant is representing himself."

prisoner is presently suffering from a mental disease or defect that requires commitment to a suitable facility for treatment. However, in both hearings, the mental condition of the defendant is directly at issue. Consequently, it was entirely appropriate in this case for the magistrate judge to deny defense counsel's request to withdraw when there was reasonable cause to believe that Klat was suffering from a serious mental illness requiring her commitment.

*Id.* at 178, 104 S. Ct. at 951. The second prong is not implicated in proceedings outside the jury's presence because the trial judge is "capable of differentiating the claims presented by a *pro se* defendant from those presented by standby counsel." *Id.* at 179, 104 S. Ct. at 951. Accordingly, the right to self-representation is "adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor." *Id.*

Applying the reasoning of *McKaskle*, Mr. Stickney's participation did not violate Klat's right represent herself at the hearing. Here, although he was not relegated to the role of standby counsel, the record demonstrates that Mr. Stickney's participation at the hearing did not infringe on Klat's ability to personally present her case to the magistrate. First, both the motion to withdraw and Klat's own statements at the hearing reveal that she did not want to proceed completely unassisted and, in fact, specifically requested the appointment of standby counsel to assist her in preparing her defense. Second, despite the magistrate judge's denial of Mr. Stickney's motion to withdraw, Klat was nevertheless given considerable latitude in controlling the conduct of her defense. Klat filed several *pro se* motions with the court, which the magistrate judge considered but ultimately denied. She fully participated in the hearing by personally presenting her arguments to the court, raising objections to the magistrate's rulings, testifying as a witness, and submitting additional evidence. Mr. Stickney's participation did not infringe her ability to control the defense, nor is there is any indication that Klat disagreed with or objected to any statements made by Mr. Stickney. We also note that, although the magistrate judge denied Mr. Stickney's motion to withdraw during the hearing, he subsequently allowed Klat to personally address the court at length, over the government's objection. On this record, we cannot say that Klat was denied a "fair chance to present [her] own case in [her] own way." *Id.* at 177, 104 S. Ct. at 950.

D. *Right to Subpoenas and to Confront and Cross-Examine Witnesses*

12

Klat next argues that she was denied her right to subpoena witnesses and documents. We review the denial of a subpoena request for abuse of discretion. *See United States v. Gonzales*, 79 F.3d 413, 424 (5th Cir. 1996). A prisoner's right to subpoena witnesses and present evidence at an involuntary commitment hearing is protected by statute, *see* 18 U.S.C. § 4247(d), and by the Due Process Clause. *See Vitek v. Jones*, 445 U.S. 480, 494-95, 100 S. Ct. 1254, 1264-65, 63 L. Ed. 2d 552 (1980); *United States v. Baker*, 45 F.3d 837, 843 (4th Cir. 1995). However, this right is not absolute. Indigent defendants have a right to subpoena witnesses and documents at government expense upon a showing that "the presence of the witness is necessary to an adequate defense." FED. R. CRIM. PROC. 17(b); *see United States v. Ramirez*, 765 F.2d 438, 440-41 (5th Cir. 1985). Courts have wide discretion in determining whether subpoenas should issue under Rule 17(b). The trial court has discretion to deny the subpoena request if the Government demonstrates "that the facts upon which the defense relies are inaccurate, or that the evidence sought is immaterial, irrelevant, cumulative or otherwise unnecessary." *Gonzales*, 79 F.3d at 424; *see Ramirez*, 765 F.2d at 441; *United States v. Webster*, 750 F.2d 307, 329-30 (5th Cir. 1984). Moreover, Rule 17(b) may not be used as a discovery device. *See Ramirez*, 765 F.3d at 441.

The district court did not err in denying Mr. Stickney's motion for issuance of subpoenas. This motion sought: (1) the production of Klat's prior employment records from Clinical One Nursing Agency and from the Delaware Nursing Licensing Board; (2) the appearance of ten medical professionals within the Bureau of Prisons who had previously treated or evaluated Klat at Washington, D.C. jail, FCI Danbury, or FMC Carswell; and (3) Klat's medical records from each facility. The motion made no attempt to demonstrate the relevance or necessity of the documents or testimony, other than the general allegation that the evidence was necessary for an adequate defense because the "defendant cannot have a fair hearing without production and inspection of the items sought." Because the motion failed to satisfy the threshold requirement for issuance of a subpoena under Rule 17(b), the magistrate judge's denial of the motion was not an abuse of discretion. *See Ramirez*, 765 F.2d at 441 (holding that general allegations regarding

13

the necessity of each witness' testimony were insufficient to satisfy the defendant's threshold requirement for obtaining a subpoena under Rule 17(b)).

We likewise find no error in the magistrate's denial of Klat's *pro se* motion for subpoenas. In her *pro se* motion, filed just three days before the scheduled hearing, Klat sought much of the same information as Mr. Stickney. Specifically, she sought the production of: (1) job references and employment records from Clinical One Nursing; (2) the medical history and records relied upon by Dr. Stanton; (3) personal references from various nursing licensing boards; (4) court records and docket sheets relating to her criminal conviction; (5) copies of nine psychological reports prepared while Klat was housed at Washington, D.C. jail and FCI Danbury; and (6) all progress/nursing notes and incident reports from the last three months of Klat's solitary confinement. This motion also failed to establish that the testimony and evidence sought was "necessary to an adequate defense." Klat's prior employment history, personal references, and the court records from her criminal trial were irrelevant to the narrow issue before the magistrate—whether Klat was *presently* suffering from a mental disease or defect requiring her commitment for treatment. The medical records, psychological reports and other documents relied on by Dr. Stanton and Dr. Schmitt were readily available to Klat and her counsel without the need for issuance of a subpoena.[19] Dr. Schmitt, Klat's own qualified examiner had already examined much of the information and concluded that commitment for treatment was warranted. Finally, issuance of the requested subpoenas at such a late date would have delayed the commitment hearing, with the potential for further endangering Klat's physical well-being due to her self-imposed hunger strike. Under these circumstances, the magistrate did not abuse his

_____

[19] Indeed, defense counsel acknowledged in the motion for a separate mental examination that "Counsel has been advised by AUSA Charles Dobbs, that all medical records relating to the defendant will be made available to Dr. Schmi[t]t." Record Vol. I, at 18. Klat does not argue on appeal that such access was either requested or denied, nor is there any indication in the record that such information was not readily available to Klat or defense counsel without the need for a subpoena.

discretion by denying Klat's *pro se* motion for the issuance of subpoenas.[20]

Finally, we reject Klat's argument that she was denied the right to confront and cross-examine Dr. Stanton and Dr. Schmitt. An alleged violation of the right to confront witnesses is reviewed *de novo*, but is subject to harmless error analysis. *See United States v. Grandlund*, 71 F.3d 507, 509 (5th Cir. 1995); *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995). We review the limitation of the scope of cross-examination for an abuse of discretion. *See United States v. Landerman*, 109 F.3d 1053, 1061 (5th Cir. 1997).

The statute governing involuntary commitment hearings states that the prisoner "shall be afforded an opportunity . . . to confront and cross-examine witnesses *who appear at the hearing*." 18 U.S.C. § 42479(d) (emphasis added). Here, no witnesses other than Klat herself testified at the hearing. Dr. Schmitt was Klat's own appointed examiner and she very well could have called him as a witness to challenge his findings. There is no indication in the record that she made any attempt to do so. Although, Dr. Stanton was present in the courtroom, she was not called as a witness by either the government or defense counsel. Finally, any error in denying Klat the opportunity to confront and cross-examine Dr. Stanton was likely harmless in light of the fact that Klat's own examiner, Dr. Schmitt, also determined that she was suffering from a mental defect or disease for which she was in need of hospitalization for treatment.

For the foregoing reasons, we affirm the order of commitment.

AFFIRMED.

---

[20] The cases relied upon by Klat—holding that the trial court abused its discretion in denying a criminal defendant's subpoena for a doctor who would testify to the defendant's incompetency at the time of the offense—are distinguishable. In those cases, the denial of the subpoena prevented the defendants from putting on an effective insanity defense at trial. *See United States v. Moudy*, 462 F.2d 694, 697-99 (5th Cir. 1972); *Welsh v. United States*, 404 F.2d 414, 417-19 (5th Cir. 1968); *Taylor v. United States*, 329 F.2d 384, 386-87 (5th Cir. 1964). Here, however, Klat was not denied the opportunity to rebut the government's expert. In fact, a qualified mental health examiner selected by Klat and her counsel was appointed to aid Klat for just that purpose.

15